IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| LEE O. CRUMBLEY, JR.,<br>Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:15-cv-445 (MHL) |
| | ) | |
| CAROLYN W. COLVIN<br>Acting Commissioner of Social Security,<br>Defendant. | ) | |
| | ) | |
| | ) | |

REPORT AND RECOMMENDATION

On November 10, 2011, Lee O. Crumbley, Jr. ("Plaintiff") applied for Supplemental

Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from two knee

reconstruction surgeries, tears of the ACL and shoulder injuries, with an alleged onset date of

November 1, 1998. The Social Security Administration ("SSA") denied Plaintiff's claims both

initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied

Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in assessing Plaintiff's residual function capacity ("RFC") and in

posing an incomplete hypothetical to the Vocational Expert ("VE"). (Mem. in Supp. of Pl.'s

Mot. for Summ. J. ("Pl.'s Mem.")(ECF No. 11) at 6-10.) This matter now comes before the

Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties'

cross-motions for summary judgment, rendering the matter now ripe for review.[1]   For the reasons

that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10)

be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED and

that the final decision of the Commissioner be AFFIRMED.

## I.   PROCEDURAL HISTORY

On November 10, 2011, Plaintiff filed an application for SSI with an alleged onset date

of November 1, 1998. (R. at 181-89.)  The SSA denied these claims initially on December 12,

2011, and again upon reconsideration on April 19, 2012. (R. at 97-101, 105-07.)  At Plaintiff's

written request, the ALJ held a hearing on January 7, 2014. (R. at 24-78.)  On February 18,

2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff

did not qualify as disabled under the Act, because Plaintiff could perform work that existed in

the national economy. (R. at 13-23.)  On May 28, 2015, the Appeals Council denied Plaintiff's

request for review, rendering the ALJ's decision the final decision of the Commissioner subject

to review by this Court. (R. at 1-4.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

---

[1]      The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite

his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III.   THE ALJ'S DECISION

On January 7, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 24-78.) On February 18, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 13-23.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 16-18.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged onset date. (R. at 18.) At step two, the ALJ determined that Plaintiff suffered the severe impairments of arthritis/ACL tears of the left knee with multiple surgeries, and arthritis in both shoulders requiring surgery. (R. at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 18.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work as defined in 20 C.F.R. § 416.967(a), subject to certain limitations. (R. at 19.) Plaintiff should avoid heights, steps and dangerous or moving machinery, and should have minimal exposure to temperature extremes. (R. at 19.) Plaintiff could only occasionally stoop, squat, kneel, crouch and crawl, and could never reach overhead with his left upper extremity. (R. at 19.) Plaintiff's reaching, fingering and handling could be frequent at times, but not repetitive, with left hand

assist at desk-level only. (R. at 19.) Plaintiff required use of a cane for ambulation and, due to pain levels, could only perform entry level, unskilled work. (R. at 19.)

At step four, the ALJ found Plaintiff had no past relevant work. (R. at 21.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 22.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 23.)

## IV.    ANALYSIS

Plaintiff, forty-eight years old at the time of this Report and Recommendation, previously worked as a warehouse worker. (R. at 200, 205.) He applied for Social Security Benefits, alleging disability from two knee reconstruction surgeries, tears of the ACL and shoulder injuries, with an alleged onset date of November 1, 1998. (R. at 79.) Plaintiff's appeal to this Court alleges that the ALJ erred in failing to provide for Plaintiff's severe limitations stemming from knee pain and in relying upon testimony that the vocational expert ("VE") delivered in response to an incomplete hypothetical. (Pl.'s Mem. at 6-10.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ did not err in assessing Plaintiff's RFC.

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC, because the ALJ did not provide for Plaintiff's severe limitations stemming from his chronic knee pain. (Pl.'s Mem. at 6.) Specifically, Plaintiff alleges that the ALJ failed to consider the recommendation of treating orthopedist Henry Shaia, M.D., that Plaintiff should consider restricting activity levels as evidence of Plaintiff's disabling knee pain. (Pl.'s Mem. at 8-9.) Defendant responds that substantial evidence supports the ALJ's decision. (Def.'s Mot. For Summ. J. and Mem. in Supp. ("Def.'s Mem.") (ECF No. 12) at 10-12.)

5

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20

C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The claimant's RFC must incorporate impairments

supported by the objective medical evidence in the record, as well as those impairments with a

basis in the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va.

June 23, 2011); *accord* 20 C.F.R. § 416.945(e). The ALJ "must first identify the [claimant]'s

functional limitations or restrictions and assess his or her work-related abilities on a function-by-

function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing

SSR 96-8p). The ALJ's RFC "assessment must include a narrative discussion describing how

the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings)

and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

Here, after considering all of Plaintiff's physical and mental impairments, the ALJ found

that Plaintiff maintained the RFC to perform sedentary work, as defined in 20 C.F.R.

§ 416.967(a), with additional limitations. (R. at 19.) Specifically, the ALJ concluded that

Plaintiff required the use of a cane on ambulation and could only occasionally stoop, squat,

kneel, crouch and crawl. (R. at 19.) Also, he should avoid heights, steps, dangerous or moving

machinery and exposure to temperature extremes. (R. at 19.) In deference to pain levels, the

ALJ limited Plaintiff to entry level, unskilled work but determined that Plaintiff retained the

capacity to understand, remember and carry out simple instructions. (R. at 19.)

The ALJ examined Plaintiff's medical records and found that they confirmed that

Plaintiff has arthritis/ACL tears of the left knee and arthritis in both shoulders. (R. at 21.)

However, he found Plaintiff's testimony regarding the extremity of the symptoms and limitations

not credible. (R. at 21.) Specifically, Plaintiff's course of treatment, the objective findings, and

his reported activities did not support Plaintiff's allegations that he had a complete inability to use his left hand. (R. at 21.) The ALJ also considered the state agency consultants' conclusions limiting Plaintiff to less than a full range of light work. (R. at 21.) The ALJ gave these evaluations some weight, but incorporated additional limitations in deference to the evidence received at the hearing and the assessment of the consultative examiner. (R. at 21.) Additionally, the ALJ gave significant weight to the opinion of Victoria Grady, M.D., finding it consistent with the credible evidence of record. (R. at 21.) Substantial evidence supports the ALJ's RFC determination.

Plaintiff's medical records support the ALJ's determination. On December 13, 2007, Plaintiff visited the West End Orthopedic Clinic for an examination of both knees. (R. at 299-300.) During the examination, Dr. Shaia noted that Plaintiff walked with a slow, but steady gait, and had good range-of-motion and good strength in both his left and right lower extremities. (R. at 299.) Dr. Shaia also noted mild to moderate degenerative changes in both knees and diagnosed Plaintiff with bilateral knee posttraumatic arthritis. (R. at 299.) He encouraged Plaintiff to consider restricted activity and continued cane use, and he offered Plaintiff injections for bilateral knee pain and talked with him about possible hardware removal, which Plaintiff declined. (R. at 300.)

On August 31, 2010, Plaintiff visited a free clinic and reported doing well. (R. at 305.) On January 25, 2011, Plaintiff presented to a free clinic complaining of left shoulder pain in abduction and internal rotation. (R. at 296.) The physician noted decreased strength in Plaintiff's shoulder. (R. at 296.)

On March 15, 2011, Plaintiff presented to Dr. Shaia complaining of shoulder pain stemming from holding up heavy sheet rock in June of the previous year. (R. at 294.) Dr. Shaia

noted that Plaintiff walked with a normal gait and ordered an MRI of Plaintiff's left shoulder. (R. at 262, 294.)  Dr. Shaia diagnosed Plaintiff with glenohumeral arthritis and recommended restricted activity.  (R. at 261.)

On September 27, 2011, Plaintiff visited the free clinic and reported that he felt well after discontinuing all medication two months earlier.  (R. at 317.)  On February 28, 2012, Plaintiff appeared well and made no complaints.  (R. at 286-87.)  On June 26, 2012, Plaintiff presented to the free clinic complaining of shoulder pain, which worsened after washing cars.  (R. at 280-82.) On July 31, 2012, Plaintiff complained of continued shoulder pain.  (R. at 313.)  Although they reveal Plaintiff's subjective complaints, these records do not contain opinions from the physicians that would support Plaintiff's complaints.

On September 25, 2012, a physical examination revealed tenderness of Plaintiff's right knee just under the skin.  (R. at 277.)  In February, August and December of 2013, Plaintiff presented to the Watson Clinic complaining of chronic bilateral knee pain. (R. at 310-11, 327-28.)  In total, these medical records established that Plaintiff walked with either a steady or normal gait and successfully managed his pain, even without the aid of medications. Accordingly, the objective medical evidence supports the ALJ's finding that Plaintiff maintained the RFC to perform sedentary work with additional limitations.

The medical opinion of examining physician Dr. Grady further supports the ALJ's determination of Plaintiff's RFC.  Dr. Grady conducted a physical examination of Plaintiff on April 11, 2012.  (R. at 268-72.)  She found Plaintiff capable of standing and/or walking for four hours and sitting for six hours in an eight-hour workday.  (R. at 271.)  She concluded that Plaintiff could occasionally carry ten pounds but should avoid bending, stooping, crouching, and squatting.  (R. at 271-72.)  Importantly, Dr. Grady noted several inconsistencies between

8

Plaintiff's medical history and his performance during the physical examination. (R. at 270-71.) For example, during his examination, Plaintiff did not pick up his right lower extremity much—a behavior Dr. Grady believed inconsistent with his medical history. (R. at 270.) Moreover, Dr. Grady questioned Plaintiff's efforts during the examination and concluded that the results of his lower extremity and strength testing lacked reliability. (R. at 271.) Finally, Dr. Grady observed Plaintiff take off and put on his shoes and socks without difficulty, and walk to his car quickly and without difficulty. (R. at 271.)

The medical opinion of non-examining State agency consultant Davis C. Williams, M.D., lends additional support to the ALJ's determination of Plaintiff's RFC. On April 17, 2012, Dr. Williams noted that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. (R. at 92.) He found that Plaintiff could sit for six hours and stand and/or walk for six hours in an eight-hour workday. (R. at 92.) He concluded that Plaintiff could frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds. (R. at 92.) Plaintiff could frequently stoop but only occasionally kneel, crouch and crawl. (R. at 93.) Ultimately, Dr. Williams concluded that Plaintiff could perform light work. (R. at 94.)

Plaintiff's own statements provide further support for the ALJ's RFC determination. On December 4, 2011, Plaintiff completed a function report. (R. at 215-22.) Plaintiff claimed that he drove his nieces from school to work and took out the trash every other day. (R. at 215.) In a Daily Activities Questionnaire dated November 4, 2012, Plaintiff claimed that he drove up to 70 miles a day. (R. at 244.) He indicated that he prepared food for himself daily, could lift between 10-15 pounds, and shopped for approximately half an hour twice a week. (R. at 217-18.) He further claimed that he could walk approximately two blocks, stand for up to an hour, and sit for up to half an hour. (R. at 220.) Finally, Plaintiff's testimony during the ALJ hearing indicated

9

that he tolerated his chronic pain when performing his daily activities. (R. at 71.) Accordingly, substantial evidence supports the ALJ's RFC determination.

Despite the substantial evidence supporting the ALJ's RFC determination, Plaintiff alleges that the ALJ erred in failing to consider evidence suggesting disabling knee pain. Specifically, Plaintiff asserts that the ALJ should have considered Dr. Shaia's recommendation that he restrict activity levels. (Pl.'s Mem. at 8-9.) He contends this demonstrates Plaintiff's inability to stand or walk for up to two hours in an eight-hour workday, as required for sedentary work. (Pl.'s Mem. at 8-9.)

The ALJ did not directly address Dr. Shaia's recommendation regarding restricting activity levels, but he did thoroughly discuss Dr. Shaia's objective observations from that visit. (R. at 19-20.) The ALJ noted the good range of motion and strength, and lack of instability. (R. at 20.) Plaintiff's hardware remained in place and he had no joint line tenderness. (R. at 20.) Dr. Shaia found no evidence of acute process, and Plaintiff declined injections. (R. at 20.)

Plaintiff's argument that the ALJ erred by not considering Dr. Shaia's recommendation fails for several reasons. First, as Plaintiff concedes, Dr. Shaia's treatment notes do not rise to the level of opinion evidence. (Pl.'s Mem. at 8.) "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms, and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined by the regulations." *Hardee v. Colvin*, 2015 WL

5331836, at *9 (E.D.N.C. Sept. 15, 2015) (internal citations omitted). Dr. Shaia's treatment notes suggesting that Plaintiff consider restricted activity do not reflect judgments regarding Plaintiff's prognosis, limitations or severity of symptoms. Specifically, Dr. Shaia's treatment notes do not express an opinion regarding what Plaintiff could still do despite his impairments. (R. at 300.) Accordingly, Dr. Shaia's notes do not constitute medical opinion evidence and the ALJ did not err in failing to consider them.

Second, Dr. Shaia's treatment notes do not necessarily indicate that Plaintiff suffers from disabling knee pain, as Plaintiff contends. According to Dr. Shaia's notes, he "encouraged" Plaintiff to "consider" restricted activity. (R. at 300.) Dr. Shaia's treatment notes do not define "restricted activity," and he gives no indication that it means "zero activity." (R. at 300.) Additionally, the treatment notes express no opinion as to how long Plaintiff can stand or walk in an eight-hour day. (R. at 300.) Furthermore, Dr. Shaia made this same recommendation a second time on March 22, 2011, when Plaintiff presented to the clinic with shoulder pain. (R. at 261.) At the time, Dr. Shaia operated under the impression that Plaintiff engaged in "heavy labor." (R. at 261.) Understood in this context, Dr. Shaia's restricted activity recommendation likely speaks more to Plaintiff's ability to engage in heavy labor than his ability to merely stand or walk. Accordingly, Dr. Shaia's recommendation does not, as Plaintiff contends, lend itself to the conclusion that Dr. Shaia believed Plaintiff unable to stand or walk for two hours in an eight-hour workday.

Finally, Plaintiff's interpretation of Dr. Shaia's restricted activity recommendation lacks consistency with the objective medical evidence. Plaintiff's medical records indicate that in the years following his 2007 visit with Dr. Shaia, he walked with a normal gait, appeared well and successfully managed his pain levels off of medication. (R. at 262, 286-87, 305, 317.) The

11

medical opinions of Dr. Grady and Dr. Williams suggest that Plaintiff's knee pain, while

limiting, did not rise to the level of disabling. (R. at 92-95, 268-72.)   Specifically, Dr. Grady

concluded that Plaintiff could stand or walk up to four hours in an eight-hour work day. (R. at

271.) Accordingly, Dr. Shaia's restricted activity recommendation provides little, if any, support

for Plaintiff's contention that his knee pain prevents him from standing or walking for up to two

hours in an eight-hour day. Thus, the ALJ's RFC determination comports with the objective

evidence in the record and adequately accounts for Plaintiff's limitations stemming from chronic

knee pain. Therefore, the Court finds that substantial evidence in the record supports the ALJ's

assessment of Plaintiff's RFC.

### B.  Substantial evidence supports the ALJ's Step Five determination.

Plaintiff argues that the ALJ's Step Five determination results from legal error and does

not enjoy the support of substantial evidence. (Pl.'s Mem. at 9.)  Specifically, Plaintiff argues

that the hypothetical question posed to the VE did not provide for the true extent of Plaintiff's

limitations with respect to standing and walking. (Pl.'s Mem. at 9.) Defendant responds that

substantial evidence supports both the ALJ's RFC findings and the subsequent hypothetical

question. (Def.'s Mot. at 13.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering

the claimant's age, education, work experience and RFC, the claimant can perform other work

existing in significant numbers in the national economy. 20 C.F.R.  §§ 404.1520(f), 416.920(f).

The Commissioner can carry her burden in the final step with the testimony of a VE. 20 C.F.R.

§§ 404.1566(e), 416.966(e).  During an administrative hearing, the ALJ must pose hypothetical

questions to the VE that accurately represent the claimant's RFC, so that the VE can offer

testimony about any jobs existing in the national economy that the claimant could perform.

*Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE become "relevant or helpful." *Walker*, 889 F.2d at 50.

Here, the ALJ asked whether an individual with Plaintiff's RFC could perform any sedentary, entry-level, unskilled work. (R. at 73-74.) The ALJ incorporated all of Plaintiff's functional limitations that he found when assessing Plaintiff's RFC into his hypothetical. (R. at 73-74.) The VE testified that a hypothetical individual with that RFC could perform work as a call-out operator, with 32,000 positions nationally, a surveillance system monitor, with 36,000 positions nationally, or an election clerk, with 45,000 positions nationally. (R. at 74.) After considering Plaintiff's age, education, work experience, RFC and the VE's testimony, the ALJ found Plaintiff capable of performing jobs existing in the national economy in significant numbers. (R. at 22.) Consequently, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 22.)

As discussed above, substantial evidence in the record supports the ALJ's RFC finding. The hypothetical questions posed to the VE incorporated all of Plaintiff's RFC. Therefore, the VE's testimony supports the ALJ's conclusion that Plaintiff could perform jobs at a sedentary level existing in significant numbers in the national economy.

## V.     CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

13

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  June 7, 2016